## WIENER v. COMPAGNIE GENERALE TRANSATLANTIQUE.

District Court, S. D. New York.
Jan. 11, 1932.

Joseph P. Nolan, of New York City, for the motion.

Proskauer, Rose & Paskus, of New York City (J. Alvin Van Bergh and Alfred Appel, both of New York City, of counsel), opposed.

WOOLSEY, District Judge.

I grant the motion for a direction of the verdict in favor of the defendant.

I. This is an action brought by the plaintiff, a first cabin passenger from New York

to Havre, France, on the steamship Ile de France in April, 1928.

His trunk was lost in a fire on the French State Railway between Havre and Paris, and the question involved here turns on whether there was a special contract between the defendant and the plaintiff to carry the plaintiff's trunk to Paris, although, confessedly, the ticket which was issued to him by the defendant was merely to transport him and his luggage from New York to Havre.

The question turns on whether the fact that a check was given to the plaintiff for the lost trunk at the New York pier of the French Line which read from New York to Paris and which was to be surrendered by him at Paris in order to secure the trunk, constituted a special contract between him and the Line outside of the ocean steamship ticket. The plaintiff contends that it did. I do not agree.

The plaintiff was an experienced traveler having crossed the ocean, by his own confession, on about fifty round trips, of which about ten had been on the French Line. He bought his railway transportation from Havre to Paris on shipboard. In the absence of the purchase of this railway transportation, the carriage of his trunk from Havre to Paris would not have been possible except on very different terms from those actually exacted, which were $3 per hundred for overweight. If he had not been a passenger on the French State Railway, it is to be assumed that quite a different scale of charges would have been made to him for the shipment of his trunk to Paris from Havre.

But the suggestion of a separate contract between the plaintiff and the French Line seems to me to be precluded by the terms of the ocean ticket which was put in evidence during the plaintiff's case and which constituted the terms on which he, with his luggage, was carried.

That ticket provides for the transportation of Mr. and Mrs. William E. Wiener, and, by inference, of course, their proper luggage, from New York to Havre on the steamship Ile de France, sailing April 7, 1928, or by any other steamer which may be substituted.

The ticket contains a series of contract provisions. Paragraph 17 reads as follows: "No agent or employee of the Company is authorized to vary or modify the terms of the foregoing agreement and each passenger agrees that this is the only contract had between him and the Company."

Neither the agent who sold the ticket to the plaintiff nor the agent who checked the trunk could have made any other contract with the plaintiff than the contract embodied in the ticket. The plaintiff must have realized that he was not paying transportation for his trunk further than Havre, especially as he knew that he had to pay extra money for his railway fare from Havre to Paris.

The highest point to which the episode of the checking of the trunk can properly rise, therefore, is to make the steamship company the forwarding agent at Havre for the plaintiff and create a duty incident to the ticket that the defendant put the plaintiff's trunk safely in the hands of the French State Railway in pursuance of the arrangement for transportation impliedly made with the plaintiff when he purchased aboard ship his tickets for the railway journey. The defendant performed this forwarding duty and, according to the evidence, delivered the trunk to the French State Railway in the same good order and condition as when it had been received. It is common ground that the loss of the trunk was not due to anything which occurred before delivery to the railway, but was due to a fire on the railway between Havre and Paris. It does not appear just where the loss occurred, but that does not matter, because the trunk then was in the custody of the railway as the "on carrier" and entirely out of the custody of the steamship company.

II. As Mr. Justice Davis said in Michigan Cent. R. Co. v. Manufacturing Co., 16 Wall. 318, at page 324, 21 L. Ed. 297: "It is the duty of the carrier, in the absence of any special contract, to carry safely to the end of his line and to deliver to the next carrier in the route beyond."

Then, after adverting to the different principles obtaining in England whereby, in the case of connecting carriers, the first receiving carrier was held for the delivery at destination and the same rule in some states, he continued: "It is unfortunate for the interests of commerce that there is any diversity of opinion on such a subject, especially in this country, but the rule that holds the carrier only liable to the extent of his own route, and for the safe storage and delivery to the next carrier, is in itself so just and reasonable that we do not hesitate to give it our sanction."

To the same effect are Ogdensburg & L. C. R. Co. v. Pratt, 22 Wall. 123, at page 129, 22 L. Ed. 827; St. Louis Ins. Co. v. St.

Louis, etc., Co., 104 U. S. 146, 26 L. Ed. 679; Myrick v. Michigan Central Ry. Co., 107 U. S. 102, at page 106, 1 S. Ct. 425, 27 L. Ed. 325; Pennsylvania R. Co. v. Jones, 155 U. S. 333, at page 339, 15 S. Ct. 136, 39 L. Ed. 176.

See, also, Basila v. Western Union Telegraph Co. (D. C.) 24 F.(2d) 569, 571, 572.

III. A contract with a carrier to carry beyond its own line "will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence." Myrick v. Michigan Central R. Co., 107 U. S. 102, at page 107, 1 S. Ct. 425, 429, 27 L. Ed. 325.

This was cited with approval in Pennsylvania R. Co. v. Jones, 155 U. S. 333, at page 339, 15 S. Ct. 136, 39 L. Ed. 176, and it was held in that case on much stronger evidence than is here shown that there had been established a contract of the Pennsylvania Railroad Company to be responsible during transit on the connecting carrier.

The same principle was also applied to the facts in St. Louis Insurance Co. v. St. Louis, etc., R. Co., 104 U. S. 146, 157, 26 L. Ed. 679, and no contract was found.

IV. I find in the instant case that the only inference properly to be drawn from the facts shown is that there was not any contract outside the ticket and, hence, that there was not any contract by the defendant to carry the defendant's luggage on to Paris.

It would, therefore, be futile for me to submit the case to the arbitrament of the jury, for if they found otherwise I should have to set their verdict aside.

Accordingly, the jury is instructed to find a verdict for the defendant, and judgment will be entered accordingly.